UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80459-CIV-MARRA

MARIA TERESA OSORIO,

    Plaintiff,

vs.

UNITED STATES OF AMERICA and
CITY OF BOCA RATON, a Florida
municipal corporation, and JOHN and
DOROTHY SEDLAK,

    Defendants.
_____/

## **OPINION AND ORDER**

THIS CAUSE came before the Court on Defendant City of Boca Raton's ("the City" or "Defendant") Motion for Summary Judgment (DE 108). Plaintiff Maria Teresa Osorio ("Plaintiff" or "Osorio") filed a Response (DE 119), and the City filed a Reply (DE 121). The Court held a hearing on the motion on July 13, 2010. The Court has reviewed the motion, the entire file in this case, and is otherwise duly advised in the premises.

**Background**

Plaintiff's Second Amended Complaint for Damages (DE 70) alleges that, on December 5, 2006, Plaintiff was walking through a parking lot located at 170 N.E. 2nd Street, Boca Raton, Palm Beach County, State of Florida, that was leased, controlled, maintained and used by Defendant United States Post Office and owned by the Sedlaks. ¶ 8. As Plaintiff was stepping

1

from the parking lot towards a right of way alley, she tripped and fell in a rain-filled sinkhole that was covered by water, causing her severe and debilitating injuries. ¶ 9.

In Count II, Plaintiff's negligence claim against the City, Plaintiff alleges that the City was the entity responsible for the construction, maintenance, or repair of the right-of-way alley which runs contiguous to the parking lot where Plaintiff allegedly fell. ¶ 24.  Plaintiff further alleges that the City breached its duty to maintain the right-of-way alley and to warn pedestrians of dangerous conditions. ¶ 26, 29.  Alternatively, "to the extent that said sinkhole and/or the area of sinkhole where Plaintiff was injured is found <u>not</u> to have existed on Defendant City's property, then it is alleged that the negligence of the Defendant City of Boca Raton's actions did actually cause and/or create said sinkhole and/or contributed to its creation." ¶ 31.

The City maintains that Plaintiff has proffered no evidence to show: (1) that the City owned the alleyway in question; or (2) that even if the City owned the alleyway in question, the condition which caused her to trip-and-fall was located on City property; and (3) that the "undertaker's doctrine" is inapplicable to the case at bar.

**Material Facts**

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

1.  On December 5, 2006, Plaintiff took a break from work and walked to the nearby United States Post Office ("Post Office") in order to mail a letter to her niece. (DE 108-1, Osorio depo. taken March 19, 2009, 44-45).

2.  It had been raining nearly the entire day.  However, by the time Plaintiff left work to

go to the post office, the rain had ceased. (Osorio depo at 45). While Plaintiff was in the post office, it started to drizzle. Id.

3. After Plaintiff mailed her letter, she walked back through the post office parking lot on her way back to work. (Osorio depo. 74:1-2).

4. There was "a lot" of water in the post office parking lot. (Osorio depo. 74:2-3).

5. There was no dry area where Plaintiff could cross from the parking lot to the alleyway. (Osorio depo. 74:3-5).

6. Plaintiff sought an area that looked like the "safest" and "easiest" way and placed her foot down. (Osorio depo. 74:3-5).

7. The place where she stepped contained a pothole. Her foot went down into the hole and she fell forward and sustained injuries to her elbow, neck, back, and right leg. (Osorio depo. 74:3-5; 81:7-24.)

8. On December 5, 2006, the parking lot was owned by John and Dorothy Sedlak (the "Sedlaks") and leased by the United States Post Office. See Affidavits of John Sedlak and Dorothy Sedlak, DE 107-1, Exh. A and B, respectively).

9. The City paved the subject alleyway approximately ten years ago. (DE 117-1, Deposition of Michael Roberts at 23:2 – 22; 25:12-17.)

10. The City performed repairs to the areas around the sewer and water utilities in the alleyway. (DE 117-1, Roberts Depo. at 13:13 – 25; 14:1 – 4.)

**Standard of Review**

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir.1989).

**Discussion**

In its Order granting the City's Motion to Dismiss the Amended Complaint, the Court held that it is the location of the trip-and-fall that is relevant for liability purposes:

> Even if the complaint is read as alleging that the sink hole spanned both the parking lot and the alley, the complaint clearly alleges that Plaintiff was walking in the parking lot when she tripped and fell. See infra. According to the complaint, the City was responsible for the maintenance, construction, and repair of the alley, not the parking lot. See Comp. ¶ 22-27. Because the injury is alleged to have occurred in the property adjacent to the alley, not in the alley itself, Plaintiff's negligence claim against the City fails. It is the location of the trip-and-fall that is important. See, e.g., Cantens v. Jeff-Son, Inc., 381 So.2d 307 (Fla. 3 DCA 1980) (affirming summary judgment in favor of hotel owner where slip and fall occurred on sidewalk area in front of the hotel and not on the hotel's property). Notwithstanding the allegation that the defective condition, a sink hole, extended onto City's property, in order to sustain her negligence claim against the City, Plaintiff must allege either that she was injured on the City's property, not on the adjacent parking lot, or that a condition of the City's property in some way contributed to her fall. The allegations of the complaint do neither. Plaintiff may amend her complaint to attempt to assert a valid claim consistent with this order.

See DE 68 at 5. After much confusion, it finally became evident that it is Plaintiff's position that, while the hole may have spanned both the parking lot and the alleyway, the portion of the hole into which she stepped that caused her to fall was located on the parking lot property. Plaintiff unequivocally stated, and it is undisputed in the record, that she tripped in the parking lot, and not in the alleyway. Accordingly, consistent with the Court's prior Order, the only theory remaining to Plaintiff regarding the City's potential negligence liability is that "a

5

condition of the City's property in some way contributed to her fall." See DE 68 at 5 (emphasis added). With that in mind, the Court considers the arguments presented in the parties' briefs.

First, the Court rejects any argument that sovereign immunity absolves the City of all potential liability in this case. The City is entitled to sovereign immunity only with respect to claims that the City negligently designed and/or constructed the alleyway, and not to claims that the City negligently maintained the alleyway. See Perez v. Department of Transp., 435 So.2d 830, 831 (Fla. 1983) (holding that "both the basic design of a roadway and decisions concerning whether or not to upgrade and improve a roadway are judgmental, planning-level functions" immune from suit under 768.28, Florida Statues, but that "a governmental entity can be liable with respect to maintenance where it has failed to maintain existing roads or traffic control devices in accordance with their original design.").

The City argues that there is no evidence that it owned the alleyway adjacent to the property where the trip-and-fall occurred and, in fact, the record evidence is to the contrary. Michael Roberts, the City's Superintendent of Streets, testified at deposition that the plat for the property indicated that the entire alleyway was owned by and still belongs to an individual named Campbell JR. See Roberts Depo., DE 108-5 at 9:1-12.

A roadway can become dedicated to public use either under common law or by statutory presumptive dedication. Hancock v. Tipton, 732 So.2d 369, 372 (Fla. 2d DCA 1999). "Common law dedication requires proof of (1) an intention by the landowner to dedicate the property to public use, and (2) an acceptance by the public." Id. "Proof of **both** elements must be clear and unequivocal, and the burden of proof is on the party claiming the dedication." Id. In this case, City Superintendent of Streets Roberts also testified at deposition that the alleyway was never

6

dedicated to the City. See Roberts Depo., DE 108-5 at 9:1-12. Moreover, the record is void of any evidence of intention by the landowner Campbell JR to dedicate the property to public use. To establish statutory presumptive dedication,

> In those instances where a road has been constructed by a nongovernmental entity, or where the road was not constructed by the entity currently maintaining or repairing it, or where it cannot be determined who constructed the road, and when such road has been regularly maintained or repaired for the immediate past 7 years by a county, a municipality, or the Department of Transportation, whether jointly or severally, such road shall be deemed to be dedicated to the public to the extent of the width that actually has been maintained or repaired for the prescribed period, whether or not the road has been formally established as a public highway.

See Fla. Stat. § 95.361(2). Here, Roberts' testimony directly contradicts any assertion that the alleyway was regularly maintained or repaired for the immediate seven years by the City. Roberts clearly testified that the City once paved the alleyway ten years ago and performed repairs around the sewer, water and utilities in the alleyway at an unspecified location in 2004. Based on the foregoing, the Court finds that there is no genuine issue of material fact as to ownership and that the City does not own the alleyway.[1]

---

[1] Even assuming that Plaintiff could establish that the alleyway was owned by the City (which the Court concludes it was not), in order to defeat summary judgment Plaintiff would still have to come forth with evidence that "a condition of the City's property in some way contributed to her fall." See infra. The only record support for this theory is the December 22, 2009 report of Thomas Black, a proposed expert of former Defendants John and Dorothy Sedlak. See DE 117-1, Exh. D. In Black's report, he states: "Engineering logic tells me that the pothole originated in the easement and spread to the subject private property since 85% of it was on the easement. Just as throwing a stone into a pond sends concentric circles that get wider so *could* the growth of the pothole have taken place in that manner." Id. at ¶ 3 (emphasis added). The Court finds that this opinion, which provides no scientifically valid reasoning or methodology to support it, is the equivalent of guesswork and pure speculation. See Allison v. McGhan Medical Corp., 184 F.3d 1300, 1316-17 (11th Cir. 1999) ("Under the regime of Daubert ... a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist."). Accordingly, while Black may be qualified to testify as an expert (the Court makes no conclusion as to his qualification), Black's causation opinion is unreliable and has no significant probative value.

The City contends it is axiomatic that, absent evidence of ownership, the City would owe no duty to the Plaintiff, a breach of which would entitle her to seek relief from the City. Nonetheless, Plaintiff argues that even if the City did not own the alleyway, the City can still be held liable pursuant to the "undertakers doctrine." This doctrine provides as follows:

> Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service-i.e., the "undertaker"-thereby assumes a duty to act carefully and to not put others at an undue risk of harm. This maxim, termed the "undertaker's doctrine," applies to both governmental and nongovernmental entities. The doctrine further applies not just to parties in privity with one another-i.e., the parties directly involved in an agreement or undertaking-but also to third parties.

Clay Elec. Co-op., Inc. v. Johnson, 873 So.2d 1182, 1186 (Fla. 2003). See also Banfield v. Addington, 140 So. 893, 896 (Fla. 1932) ("In every situation where a man undertakes to act, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible."). For example, in the case of Kowkabany v. Home Depot, Inc., 606 So.2d 716 (Fla. 1st DCA 1992), the court held that, where a business establishment's employee undertook to load timber into a customer's car and the improper loading of the timber caused injury to a third-party bicycle rider, the business establishment created a zone of risk and owed the bicycle rider a duty of care. Also, in Clay

---

Therefore, the Court will exclude it from its consideration of the City's motion for summary judgment. See Coats & Clark, Inc. v. Gay, 755 F.2d 1506 (11th Cir. 1985) (concluding that expert opinion based upon speculation and guesswork had no significant probative value and, as such, ruling it was insufficient to defeat a summary judgment motion); Kilpatrick v. Breg, Inc., --- F.3d ----, 2010 WL 3168655 (11th Cir. 2010) (holding that district court did not abuse its discretion in finding expert's methodology to establish specific causation unreliable under Daubert).

8

Elec., the court held that a streetlight maintenance company, who contracted with the government to maintain the lights, could be held liable to a third person who was struck and killed by a truck in an area where the streetlight was inoperative.

Plaintiff misconstrues the application of the undertaker's doctrine to the case at bar. Significantly, the undertaker's doctrine does not create a duty for the City to maintain the alleyway for some indefinite period of time into the future simply because it gratuitously paved it ten years prior, or because it performed repairs to the areas around the sewer, water, or utilities in the alleyway at an unspecified location in 2004. Nor do such actions create or impose premises liability on the City. Rather, liability may be ascribed to the City by way of the undertaker's doctrine only if it can be shown that the gratuitous actions that the City undertook, i.e. the paving ten years prior or the 2004 sewer repairs, were performed <u>negligently</u> and that such negligence contributed to or caused Plaintiff's injuries. The record, however, is entirely void of any evidence to support the contention that any activity by the City with respect to the alleyway caused the sinkhole. <u>See</u> <u>McDowell v. Continental Airlines, Inc.</u>, 54 F.Supp.2d 1313, 1316 (S.D. Fla. 1999) ("Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim."). Accordingly, the Court finds that the undertaker's doctrine is inapposite to establishing liability on behalf of the City in this case.

**<u>Conclusion</u>**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant City

of Boca Raton's Motion for Summary Judgment (DE 108) is **GRANTED**. A final judgment shall be entered separately.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of August, 2010.

                                        _____
                                        KENNETH A. MARRA
                                        United States District Judge

Copies furnished to:
All counsel of record